UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TODD SPORRER,

      Plaintiff,

  v.            Case No. 19-CV-1734

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

      Defendant.

## DECISION AND ORDER

**1. Introduction**

  Plaintiff Todd Sporrer alleges that he has been disabled since August 3, 2016. (Tr. 52.) He seeks disability insurance benefits and supplemental security income. After his application was denied initially (Tr. 359-388) and upon reconsideration (Tr. 391-428), a hearing was held before an administrative law judge (ALJ) on September 27, 2018 (Tr. 243-80). On January 17, 2019, the ALJ issued a written decision concluding that Sporrer was not disabled. (Tr. 47-72.) After the Appeals Council denied his request for review on September 26, 2019 (Tr. 1-7), Sporrer filed this action. All parties have consented to the

full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since August 3, 2016, the alleged onset date." (Tr. 52.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Sporrer has the following severe impairments: "mild degenerative disc disease of the cervical and lumbar spine, mood disorder, and anxiety disorder." (Tr. 52.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Sporrer has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: he may not climb ladders ropes or scaffolds, but can occasionally climb of [sic] ramps and stairs. He can occasionally balance, stoop, crouch, kneel and crawl; he can perform no overhead reaching bilaterally. He can have no exposure to unprotected heights or unprotected moving machinery. Mentally, the claimant is limited to understanding, carrying out and remembering no more than simple instructions. He can perform simple, routine tasks performed in an environment free from fast-paced production requirements. He can perform jobs involving only simple work-related decisions and few, if any, workplace changes. He can have only occasional interaction with the public, co-workers and supervisors.

(Tr. 56.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that "[t]he claimant is unable to perform any past relevant work." (Tr. 63.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 64.) Specifically, the ALJ identified positions as a "lens inserter," "masker," and "touchup screener / printed board assembly." (Tr. 64-65.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve

conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

**4.1. Concentration, Persistence, and Pace**

At step three the ALJ found that Sporrer had moderate limitations in concentration, persistence, and pace. (Tr. 55.) In articulating Sporrer's RFC the ALJ found that Sporrer

> is limited to understanding, carrying out and remembering no more than simple instructions. He can perform simple, routine tasks performed in an environment free from fast-paced production requirements. He can perform jobs involving only simple work-related decisions and few, if any, workplace changes.

(Tr. 56.)

Sporrer argues, "Such limitations did not directly encapsulate moderate limitations in concentration, persistence, or pace ('CPP') and such limitations have generally been rejected by the Seventh Circuit when the Commissioner has asserted that such limitations addressed CPP." (ECF No. 14 at 15.)

The caselaw that Sporrer cites relates to instances where an ALJ attempted to rely on a single restriction—such as limiting a person to unskilled work or jobs with no production quotas—as a proxy for the multi-faceted limitations in the overlapping domains of concentration, persistence, and pace. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). This is not what the ALJ did here. Rather, the ALJ articulated multiple limitations, including limiting Sporrer to jobs that involved "simple instructions," simple decisions, "simple and routine tasks," few workplace changes, and no "fast-paced production requirements." Taken together, these limitations were sufficient to encompass a moderate limitation in concentration, persistence, and pace. The ALJ was not required to specifically refer to "concentration, persistence, and pace" when articulating Sporrer's RFC. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020).

Sporrer next argues that "the ALJ did not properly tailor the hypothetical question consistent with Circuit precedent." (ECF No. 14 at 18.) Specifically, he argues that "we have nothing indicating consideration of work pace." (ECF No. 14 at 19.) But the ALJ limited Sporrer to jobs without "fast-paced production requirements," thus explicitly referring to a limitation to the pace at which Sporrer may work.

Sporrer nonetheless points to *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015), to argue that this was insufficient. In *Varga* the court said, "It is also problematic that the ALJ failed to define 'fast paced production.' Without such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain

6

the pace proposed." *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015). But the court has recently disavowed any suggestion that the inherent vagueness of a term like "fast-paced production" was a basis for remand. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Our holding in *Varga* did not root itself in vagueness, though. To be sure, we noted that the phrase 'fast paced production' had more than one meaning. But we reversed because the ALJ failed to include the claimant's significant problems concentrating in the RFC determination."). Thus, in *Martin* the court rejected as a basis for remand the plaintiff's argument about the ALJ's use of a similarly vague limitation to "an environment that allowed her to sustain a flexible and goal oriented pace." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020).

Consequently, the court must reject Sporrer's argument. Limiting Sporrer to work without "fast-paced production" requirements was sufficient to account for a moderate limitation in pace.

Even if the court were to conclude that "fast-paced" required a definition, there would be no basis for remand because the term *was* defined in the proceedings before the ALJ. In questioning the vocational expert, Sporrer's attorney relied on the Department of Labor's Occupational Employment Statistics Collection Manual and defined "fast-paced" work as "rapid and the workload was constant, the worker has little downtime between completing a task and performing another task or receiving a new assignment." (Tr. 278-79.) The vocational expert testified that the jobs he identified were consistent with that

7
Case 1:19-cv-01734-WED   Filed 12/01/20   Page 7 of 12   Document 23

definition. (Tr. 279.) Thus, there was no ambiguity, and there is no indication that the ALJ's use of the term was inconsistent with the vocational expert's understanding.

Sporrer next criticizes the ALJ for giving significant weight to the opinions of state agency psychological consultants Ellen Rozenfeld and Jan Jacobson. Sporrer's argument with respect to Rozenfeld (ECF No. 14 at 24-25) is undeveloped and unclear. It appears that he criticizes Rozenfeld for not addressing a limitation with respect to pace in the narrative portion of her report. (ECF No. 14 at 24-25.) But he does not develop any argument as to why it was it was allegedly error for the Rozenfeld to not include such detail in her narrative, much less how this resulted in error in the ALJ's decision. Because the argument is undeveloped, it is forfeited. *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018); *Webster v. Astrue*, 580 F. Supp. 2d 785, 794 (W.D. Wis. 2008).

As to Jacobson, in his initial brief Sporrer offers certain arguments that he abandons in his reply. (*See* ECF No. 22 at 10 ("While Sporrer had a problem with the statement of Dr. Jacobson, it was more of an aside than the main point.").) Thus, the court does not consider arguments regarding Jacobson that Sporrer does not address in reply. *Dubravac v. Berryhill*, No. 17 CV 50228, 2018 U.S. Dist. LEXIS 211745, at *7 (N.D. Ill. Dec. 17, 2018).

But while abandoning some arguments, Sporrer introduces new arguments in his reply. He argues for the first time that the ALJ erred by failing to consider Jacobson's opinion that "due to his limited cognition and feelings of depression he would have some

issues with maintaining concentration for two hour time periods in an eight hour day and a forty hour week." (ECF No. 22 at 6 (quoting Tr. 407).) This specific argument that the ALJ erred because he "made no effort to include a limitation to the ability to maintain attention for short time periods of less than two hours" (ECF No. 22 at 6) was not presented in Sporrer's initial brief. As a result, the Commissioner did not have the opportunity to respond to it. Consequently, the argument is not properly before the court. *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016).

But even if the court were to consider the argument, the court would conclude that there was no error in the ALJ's failure to explicitly discuss this aspect of Jacobson's opinion. In the very next sentence of his report Jacobson concluded that Sporrer "would be suitable for work that does not require changing tasks from day to day, but rather has a fairly regular set of job duties and expectations." (Tr. 407.) Thus, read together, Jacobson's opinion suggests a view that any limitation that might result from his "issues with maintaining concentration" may be sufficiently addressed in a job "that does not require changing tasks from day to day, but rather has a fairly regular set of job duties and expectations." (Tr. 407.) The ALJ included such limitations in his RFC finding. (Tr. 56.)

In sum, Sporrer has not demonstrated that there was any inconsistency between the ALJ's RFC finding and his affording "significant weight" to the opinions of Rozenfeld

and Jacobson. The ALJ's RFC finding adequately accounted for Sporrer's limitations in concentration, persistence, and pace and was supported by substantial evidence.

**4.2. Mitchell Connell**

Sporrer also argues that the ALJ erred by failing to consider limitations found by Sporrer's counselor, Mitchell Connell,[1] despite giving Connell's opinion "some weight" (Tr. 62). (ECF No. 14 at 28-32.) Specifically, he argues, "[b]ecause the ALJ gave some weight to this opinion without addressing the key finding regarding stress, the ALJ's assessment is flawed." (ECF Nos. 14 at 28; 22 at 12.)

As a counselor, Connell is not an acceptable medical source. 20 C.F.R. §§ 404.1502(a); 416.902(a). The ALJ, nonetheless, was generally expected to explain the weight he gave to this opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p (rescinded but applicable to claims filed before March 27, 2017); *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). The ALJ need only minimally articulate his reason for discounting such an opinion. *Sosh v. Saul*, 818 F. App'x 542, 547 (7th Cir. 2020).

---

[1] Sporrer repeatedly referred to Connell as a "consultative" examiner. (ECF Nos. 14 at 20, 38; 22 at 12.) However, Connell had a treating relationship with Sporrer. (Tr. 856.) The ALJ repeatedly referred to Sporrer's counsellor as "McConnell." (Tr. 62.) However, Sporrer's counselor was Mitchell *Connell*, and not the Senate Majority Leader.

The ALJ explicitly noted that Connell opined that Sporrer would have "difficulty responding to routine work pressures," *i.e.*, stress. But the ALJ noted that Connell followed this conclusion by observing that Sporrer is able to "use coping skills when significant environmental stressors are put upon him." (Tr. 62; 857.) He further noted that Sporrer "conced[ed] at the hearing that he has learned how to effectively deal with and manage his mental health symptoms." (Tr. 62.)

These observations satisfied the ALJ's obligation to minimally articulate the basis for his decision to afford Connell's decision "[s]ome weight." Nothing more was required.

5. **Conclusion**

Limiting Sporrer to work without "fast-paced production" requirements was sufficient to account his limitations regarding pace. Although Jacobson stated that Sporrer may be limited in his ability to maintain concentration for up to two hours at a time, Jacobson indicated this could be addressed by limiting him to jobs that did not change from day to day. The ALJ accounted for this aspect of Jacobson's opinion by limiting Sporrer to jobs that involved only simple, routine tasks. And, finally, as to Connell's opinion regarding Sporrer's ability to handle stress, the ALJ adequately explained why he discounted this aspect of Connell's opinion. He noted, as did Connell, that Sporrer had developed strategies for dealing with his symptoms, and even Sporrer acknowledged he was able to deal with his symptoms.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**.

The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of December, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge